UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALLACE G. MITCHELL, | ) |
| | ) |
| *Claimant*, | ) |
| | ) |
| v. | ) |
| | ) |
| DR. C. EPHRUSSI, DR. AMY MORGAN, DR. ANN SAVARESE, DR. D. MARSHALL, DR. NORA BAMMIDI, DR. CHUKWU, DR. JULENDA BUSCHULTE, DR. KAREN HARRISON, DR. ENGIN, P.A. HIGHTOWER, P.A. GLORIA FITZGERALD, UNITY HEALTHCARE, INC., DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS, and DR. HAMMOND, D.D.S. | ) Civil Action No. 1:15-cv-1975 |
| | ) |
| UNITY HEALTH CARE, INC. 1120 12th St., S.E., Suite 120 Washington, DC 20003 | ) |
| | ) |
| *Respondents*. | ) |

Notice of Removal

To the Clerk of the above-entitled Court:

1. Pursuant to 42 U.S.C. §§ 233(c) and 233(*l*)(2), 28 U.S.C. § 2679(d)(3), 28 U.S.C. § 1442(a)(1), 28 U.S.C. § 1331, and on the grounds set forth below, Unity Health Care, Inc. ("Unity") and the individual defendants, who are each deemed to be a Public Health Service (PHS) employee for purposes of 42 U.S.C. § 233(a), respectfully remove to this Court the civil action of *Wallace Mitchell v. Dr. C. Ephrussi, et al.*, *Dkt. No.* 2015 CA 4380, which was commenced on or about June 16, 2015, in Superior Court of the District of Columbia, Civil Division.

Jurisdiction

2.      Because the Secretary of the U.S. Department of Health and Human Services (HHS), pursuant to 42 U.S.C. § 233(g) and (h), granted Unity's "deeming" applications for itself and its personnel for all relevant periods and purposes of 42 U.S.C. § 233(a), and because this civil action arises out of the performance of medical, surgical, dental, or related functions of Unity and its deemed employees while acting within the scope of their office, employment, or responsibility, the civil action is properly removed to this Court under 42 U.S.C. § 233 *et seq.*, 28 U.S.C. § 2679(d)(3), 28 U.S.C. § 1442(a)(1) and 28 U.S.C. § 1331.

Parties

3.      Defendant/respondent Unity is and was at all times relevant to this action or proceeding: a District of Columbia non-profit, tax-exempt corporation that operates several primary care clinics and offers health care services to individuals throughout the District of Columbia; a community "health center" recipient of federal grant funds under Section 330 of the Public Health Service ("PHS") Act, which is codified at 42 U.S.C. § 254b; and deemed to be a PHS employee for purposes of 42 U.S.C. § 233(a) and (g).

4.      At all times relevant to this action or proceeding, the individually named defendants/respondents Dr. Corey Ephrussi, Dr. Amy Morgan, Dr. Ann Savarese, Dr. Donald Marshall, Dr. Nora Bammidi, Dr. Jualenda Boschulte, Dr. Karen Harrison, Dr. Otis Egins, Larnette Hightower, RN, Gloria Fitzgerald, PA, Clarence Hammond, DDS, and Dr. Helen Chukwu (referred to collectively herein as "individual deemed defendants")[1] were health care provider employees of Unity and deemed to be PHS employees for purposes of 42 U.S.C. § 233(a) and (g).

---

[1] Counsel for Unity and individual defendants has attempted to provide full names and proper credentials for each defendant listed in the case caption.

5. Defendant/respondent District of Columbia Department of Corrections ("DOC") is an agency of the District of Columbia and is comprised of two primary correctional facilities: the Central Detention Facility and the Correctional Treatment Facility.

6. Plaintiff/claimant Wallace G. Mitchell is and was a patient of Unity and an inmate at the DOC at all times relevant to his complaint.

Federal statutory and regulatory framework

7. The Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, § 4, 84 Stat. 1868, 1870-71 (1970), codified at 42 U.S.C. § 233 ("Section 233(a)"), confers immunity on officers and employees of the PHS with respect to any civil damages action "for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions…while acting within the scope of his office or employment..." 42 U.S.C. § 233(a).

8. The legislative objective of Section 233(a) is to facilitate the provision of medical services in underserved areas by shielding PHS personnel from personal liability arising out of their medical and related duties. Without such protection, PHS personnel could not otherwise afford it through professional liability insurance. *See* § 2, 84 Stat. 1868; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970) (Rep. Staggers, the House of Representatives sponsor, stating that PHS physicians "cannot afford to take out the customary liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive.").

9. The Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 102-501, 106 Stat. 3268 (1992), amended and reauthorized by the Federally Supported Health Centers Assistance Act of 1995, Pub. L. 104-73 (Dec. 26, 1995) (collectively referred to herein as the "FSHCAA") (codified at 42 U.S.C. § 233(g) *et seq*.), authorizes the Secretary of the U.S.

Department of Health and Human Services ("HHS") to "deem" federally-funded health centers and their officers, directors, and employees (and some of their contractors) to be PHS employees and thereby extend to them the same protection that Section 233(a) affords to PHS employees. That protection is a grant of "*absolute immunity* . . . for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (emphasis added) (PHS employees are immune from constitutional tort or *Bivens* claims despite the fact that the FTCA – which provided the plaintiffs' with their exclusive remedy – does not waive the United States' sovereign immunity for constitutional and other intentional torts) (recognizing that the scope of Section 233(a)'s broad immunity is logically distinct from the scope of the FTCA's limited waiver of sovereign immunity).

10. By extending Section 233(a)'s absolute immunity to eligible Section 330 health center grantees and their personnel, Congress (through the FSHCAA) sought to significantly reduce, if not eliminate, the need for those health centers to use grant funds toward expensive private medical malpractice insurance. H.R. Rep. 102-823(I), at 3 (Aug. 10, 1992), 1992 U.S.C.C.A.N. 2627, 1992 WL 197773.

11. The FSHCAA was premised on findings of both Congress and the Government Accountability Office ("GAO") that the centers' private malpractice insurance costs were not only going through the roof, but were not justified by the health centers' malpractice experience. *See* 138 CONG. REC. S17,862 (daily ed. Oct. 8, 1992) (statement of Sen. Edward Kennedy), 1992WL 279542 ("However, the health centers have been paying more than $60 million a year for their private sector malpractice premiums, despite the fact that their claims experience has been approximately $5 million annually."); *see also* U.S. Gov't Accounting Office, GAO/HRD-

93-150, Federal Medical Malpractice Insurance (Sept. 24, 1993), at 28 ("Relative to the medical malpractice insurance premiums paid, the malpractice claims payments were about 47 percent of what [the actuarial firm engaged by GAO] would have expected…").

12. In its "pilot" phase – from 1992 until 1995 – the FSHCAA achieved savings but uncertainty as to the scope of the program's protection and delays in the processing of claims against deemed centers and individuals "served as disincentives for full health center participation in the program." H.R. REP. 104-398, at 7 (1995), *reprinted in* 1995 U.S.C.C.A.N. 767, 770.

13. For example, under the FSHCAA of 1992, the Secretary of HHS had to consult with the Attorney General in determining whether to "deem" a Section 330 health center grantee and its personnel for purposes of 42 U.S.C. § 233(a) immunity, *see* Pub. L. No. 102-501, 106 Stat. 3268, 3269 (1992), and the Attorney General was responsible for making "scope of employment" certifications for both regular *and* deemed PHS employees. The statute did not, however, explicitly provide a process or timeline for making such deeming determinations and as a result the Secretary and Attorney General (through Assistant United States Attorneys) did not determine whether to extend Section 233(a) immunity to a health center or its personnel until after a claim was made against the center and/or is personnel. That after the fact determination – by creating the delays in the processing of claims and uncertainty as to the protection the program afforded – undermined the program's purpose.

> When a claim is filed against a health center, the Department of Justice (DOJ) requests the health center's application for FTCA coverage from HHS and often has requested additional supporting documentation from the health center concerning the items described in the application. The examination of this documentation after a claim is filed, rather than when the application for coverage is approved, has resulted in delays in the appearance by DOJ in State or local court. This has resulted in at least one default judgment against a

>health center involving a claim that later was determined to be covered under the FTCA.

H.R. REP. 104-398, at 7.

14. The 1995 amendments to the FSHCAA made a number of "procedural modifications" designed to "remedy this problem," "improve the efficiency of the operation of the program," and increase health center participation. H.R. Rep. No. 104-398, at 5. The amendments, among other things:

   a. repealed the requirement for the Secretary of HHS to have a "consultation with the Attorney General" in making deeming determinations, § 2(h), Pub. L. No. 102-501, 106 Stat. 3268;

   b. imposed a duty on the Secretary to make *prompt* and *advance* deeming determinations (*i.e.*, within 30 days of receiving an application to be deemed for a prospective period);

   c. made the Secretary's deeming determination as to a center and its personnel "final and binding" on the Attorney General and all other parties;

   d. provided that the Secretary's advance and binding deeming determination would, by operation of law, satisfy the scope of employment certification under Section 233(c) (which had previously been reserved to the Attorney General for both regular and deemed PHS personnel).

   e. imposed a mandatory (non-discretionary) duty on the Attorney General to appear in state court within fifteen days of being notified of the case (Section 233(b) had already imposed a duty on the particular federal agency to "promptly" furnish the Attorney General with copies of the state court pleadings).

6

15. These changes were plainly designed to reduce the discretion and role of the Attorney General in the deeming and scope of employment determinations with respect to Section 330 health centers and their personnel. The Attorney General retained the Section 233(c) authority with respect to regular PHS employees.

16. In essence, the FSHCAA of 1995 operates as follows:

17. In order to be deemed a PHS employee, for purposes of Section 233(a) immunity, the FSHCAA requires a health center to submit an application in a form and manner prescribed by the Secretary of HHS. *Id*. at § 233(g)(1)(D). The application must contain detailed information and supporting documentation sufficient for HHS to verify that the coverage would apply to all services provided by the particular Section 330 center and its providers to patients (and in limited circumstances, non-patients) of the center, and demonstrate that the center meets four requirements listed in subsection (h). 42 U.S.C. § 233(g)(1)(D) and (h).

18. The Secretary (as noted above) is required to make a deeming determination for health centers and their personnel within 30 days of receipt of a deeming application. *Id*. at § 233(g)(1)(E). A favorable deeming determination by the Secretary (which confers immunity) is "final and binding" (42 U.S.C. § 233(g)(1)(D)-(F)) on HHS, the Attorney General, and any party to any civil action or proceeding, 42 U.S.C. § 233(g)(1)(F), but a negative determination (one denying a deeming application under Sections 233(g) and (h)) is not final and binding. *El Rio Santa Cruz Neighborhood Heath Ctr., Inc. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1271 (D.C. Cir. 2005) (recognizing statute's "final and binding" clause does not apply to a negative coverage determination and finding that HHS was not making advance deeming determinations with respect to individual defendants as the statute plainly required).

19. The FSHCAA contemplates that, in the event of a (timely) negative deeming determination, the applicant would have a reasonable opportunity to pursue one or more of the following options: seek reconsideration of the Secretary's decision; submit a new application (one that addresses the Secretary's stated basis for the prior denial); challenge the Secretary's decision under the APA; or, take steps to procure private malpractice insurance. *El Rio Santa Cruz*, 396 F.3d at 1272.

20. When a plaintiff files suit against a deemed health center and/or any of its employee providers in state court, the deemed entity or individual must provide a copy of the complaint to HHS Office of General Counsel ("HHS OGC"). The agency instructs all deemed health centers to do so, by fax or email, to the Office of General Counsel, U.S. Department of Health and Human Services. *See* HRSA, http://bphc.hrsa.gov/ftca/healthcenters/hcclaims.html (last accessed November 7, 2015).

21. The deemed defendant's notice to HHS triggers a process that is designed to be foolproof, as it consists of two mandatory duties. First, the statute requires that HHS OGC "shall promptly furnish copies of the pleading and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the Secretary." 42 U.S.C. § 233(b). Second, the Attorney General has a nondiscretionary duty to appear in that court within 15 days of notice of the lawsuit to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id*. at § 233(*l*)(1). The report to the state or local court of that favorable deeming determination is also "deemed to satisfy the provisions of [42

U.S.C. § 233(c)] that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility." *Id.*

22. If, however, history repeats itself and a state court case is not timely removed to federal district court on behalf of the deemed entity or individual, the FSHCAA affords the entity or individual (as a deemed federal employee) a right to remove the case. Where, as here, the deemed entity or individual exercises that right, the state court proceeding is then stayed, by operation of law, until the federal district court conducts a "hearing" to determine the proper forum or procedure and issues an order consistent with its determination. *Id.*

23. The hearing in federal district court following § 233(*l*)(2) removal is designed to confirm that HHS "determined under subsections (g) and (h) of [§ 233], that such entity [or] employee … is deemed to be an employee of the [PHS] for purposes of [§ 233] with respect to the actions or omissions that are the subject of such civil action or proceeding," *id.* at § 233(*l*)(1), and to ensure that the United States is substituted as the defendant. *El Rio Santa Cruz Neighborhood Heath Ctr., Inc.*, 396 F.3d at 1272; *Booker v. Greater Philadelphia Health Action, Inc.*, 10 F.Supp.3d 656 (E.D. Penn. 2014); *see also United States v. Booker*, 2015 WL 3884813, at *7, 13-cv-1099 (E.D. Penn. June 24, 2015) (Sanchez, J.) ("hearing contemplated upon removal pursuant to [42 U. S.C.] § 233(*l*)(2) serves the same purpose as the procedure contemplated by [28 U.S.C.] § 2679(d)(3), *i.e.*, to allow the court to determine whether the defendant is entitled to FTCA coverage with respect to the conduct on which the action is based"). Because the Secretary is required to make deeming determinations within 30 days of an application and in advance of any period in which a lawsuit arises, the determination is known and easily ascertainable fact. Indeed, that fact is memorialized and reflected in a Notice of Deeming

document, which the Secretary's delegee issues to the covered entity. *See infra* ¶ 24, Doc. Nos. 0001-0004.

Factual background and procedural history:<br>
Deemed status and immunity of Unity and individual deemed defendants

24.  Unity submitted deeming applications for itself and its personnel with respect to each year and all times relevant to this action.  The Secretary of HHS through his or her authorized delegee, and under 42 U.S.C. § 233(g) and (h), approved those applications and deemed Unity and its personnel for purposes of the protection afforded by Section 233(a).  True and accurate copies of favorable deeming determinations covering 2014 through 2015 are attached hereto at Doc. Nos. 0001-0004.

25.  On or about June 16, 2015, apparently acting *pro se*, plaintiff filed a civil action against defendants in the Superior Court of the District of Columbia, alleging personal injuries as a result of the acts or omissions of Unity, several Unity provider employees, and DOC.  The central allegation is that defendants, both individually and collectively, were deliberately indifferent to plaintiff's medical needs.  A true and accurate copy of the Superior Court electronic case docket as reflected on the District of Columbia Courts website as of November 6, 2015, is attached hereto at Doc. Nos. 0005-0009.

26.  After Unity received the complaint, in late June or early July 2015, it (through counsel) promptly delivered it to HHS OGC on July 15, 2015.  A true and accurate copy of the e-mail and attachments sent by counsel for Unity to a representative from HHS OGC are attached hereto at Doc Nos. 00012-00022.

27.  Instead of "promptly" furnishing the complaint to the Attorney General and local U.S. Attorney, in accordance with 42 U.S.C. § 233(b) and 28 C.F.R. §15.2, HHS OGC sought additional information from Unity.  Unity gathered the requested information and sent it by

overnight mail to HHS OGC on September 8, 2015. A true and accurate copy of the information request from HHS OGC is attached hereto at Doc. Nos. 00023-00027. A true and accurate copy of the cover letter to Unity's first responsive submission is attached hereto at Doc. Nos. 00010-00011.

28. As of mid-October, HHS OGC had still not furnished the complaint to the Attorney General or local U.S. Attorney, and the Attorney General had not appeared in court in accordance with 42 U.S.C. § 233(*l*)(1).

29. Unity (through counsel) made a number of inquiries of HHS OGC to ascertain whether the United States would be defending Unity and its employees in this matter, but was unable to get a definitive answer in response. True and accurate copies of e-mail correspondence between Unity's counsel and federal officials reflecting these exchanges are attached hereto at Doc. Nos. 00060-000100.

30. For example, HHS OGC expressed its view, on the one hand, that Unity is immune under Section 233(a) and that the individual deemed defendants acted within the scope of their employment with respect to this action, but that the U.S. Attorney nonetheless would not be defending them (*i.e.*, removing the action to federal court and substituting the United States for them). *See* Doc Nos. 00060-00064. As another example, HHS OGC indicated that the "USAO will not be involved with this case" and confirmed that it had not provided the complaint to the Attorney General (or her representative) as of October 26, 2015, but also insisted that "the **ULTIMATE** decision regarding certification and representation [of Unity and its employees] is that of DOJ," not HHS. *See* Doc. Nos. 00073-00076 (emphasis in original).

31. On November 3, 2015, a local Assistant U.S. Attorney entered an appearance in the D.C. Superior Court and confirmed "defendants' deemed status under 42 U.S.C. §§ 233(g)

and (h)," but nevertheless declined to remove and defend the case, indicating that the Attorney General will only determine whether to do so after HHS provides its report and recommendation as to whether Unity and its employees' Section 233(a) immunity) extends to this action. A true and accurate copy of the Assistant U.S. Attorney's notice is attached hereto at Doc. Nos. 000101-000103.

32. The 1995 amendments to the FSHCAA, including its removal provisions, sought to eliminate the very "problem" Unity and the individual defendants are experiencing here – lengthy delays in the government's processing of a claim and uncertainty as to the scope of their immunity.

## Conclusion

33. For the forgoing reasons, Unity and the individually deemed defendants hereby remove to this Court the civil action of *Wallace G. Mitchell v. Dr. C. Ephrussi, et al.,* Dkt. No. 2015 CA 4380.

| | |
|---|---|
| Washington, D.C.<br>Dated: November 7, 2015 | Respectfully submitted,<br>Feldesman Tucker Leifer Fidell LLP |

By: /s/ *Matthew S. Freedus*
Matthew S. Freedus
D.C. Bar No. 475887
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, N.W., 4th Floor
Washington, DC 20036

Phone: (202) 466-8960
Fax:   (202) 293-8103
Email:  mfreedus@ftlf.com


Terence J. O'Connell
O'CONNELL & O'CONNELL
D.C. Bar 367054
401 East Jefferson Street, Suite 204
Rockville, MD 20850

Phone: (301) 424-2300
Fax:   (301) 424-2394
Email: toconnell@oconnelllaw.com

*Attorneys for Unity Health Care, Inc. and individually named defendants*